**FILED**

MAY 0 3 2007 NF

5-3-07

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

The Majestic Star Casino, LLC,  )
Plaintiff,  )
 )  **07CV2474**
v.  )  **JUDGE GETTLEMAN**
 )  **MAGISTRATE JUDGE VALDEZ**
Trustmark Services Company, Inc.  )
Defendant.  )

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Comes now the Plaintiff, The Majestic Star Casino, LLC ("Majestic"), by counsel, and for its Complaint against Trustmark Services Company, Inc. (hereinafter, "Trustmark") states as follows:

### STATEMENT OF THE CASE

This is an action seeking declaratory relief and money damages for failure to pay amounts owed pursuant to stop loss insurance policies. Plaintiff asserts claims for declaratory relief, breach of contract, bad faith, breach of fiduciary duty and unfair claims practices under Nevada law (which governs the policies).

### JURISDICTION AND VENUE STATEMENT

1.     Majestic is an LLC organized under the laws of the State of Indiana, with its principal place of business in Nevada. Majestic has one member, Majestic Holdco, LLC. Majestic Holdco, LLC is organized under the laws of Indiana and has its principal place of business in Indiana. The sole member of Majestic Holdco, LLC is Barden Development, Inc., an Indiana corporation with its principal place of business in Michigan. Trustmark is a Delaware corporation, with its principal place of business in Illinois.

2.     This Court has original jurisdiction over this claim pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

3.      Venue is proper in Chicago, Illinois because the Contracts under which the dispute arises provide that any lawsuit must be filed in Chicago, Illinois. *See* Composite Exhibit A.   In addition to doing business in Illinois, and being located in Illinois, Trustmark has consented to personal jurisdiction in Illinois by selecting Illinois as the chosen forum for lawsuits brought under the Contracts.

## ALLEGATIONS COMMON TO ALL COUNTS

4.      At all times relevant hereto, Majestic sponsored certain employee health benefit plans for the benefit of certain employees of Majestic and its subsidiaries, as well as their dependents ("Plans").

5.      Between January 1, 2004 and January 1, 2005, a stop loss insurance contract existed between Majestic and Trustmark whereby Trustmark would reimburse Majestic for certain losses incurred pursuant to the Plans, above individual attachment points. This contract was renewed on January 1, 2005, and Trustmark therefore was obligated to reimburse claims incurred through until January 1, 2006. The two agreements are collectively referred to herein as "Contracts." Copies of the Contracts are attached hereto as Composite Exhibit A (with the identity of certain Plan participants redacted).

6.      The Contracts state that they shall be governed by the laws of Nevada.

7.      Majestic engaged a third-party administrator, Benefit Administrative Systems, LLC ("BAS"), for the purposes of administering claims under the Plan and securing reimbursement for covered losses from Trustmark, among other things.

8.      During 2004, Majestic paid claims on behalf of a participant (hereinafter referred to as "Participant 1") that exceeded the individual attachment point under the Trustmark insurance policy by approximately $126,700.78.

9.      Also during 2004, through its agent BAS, Majestic submitted a timely stop loss claim to Trustmark with respect to Participant 1 ("2004 Stop Loss Claim").

10.     Trustmark paid a portion of the 2004 Stop Loss claim with respect to Participant 1, but denied approximately $101,305.77 of the 2004 Stop Loss Claim.

11.     Through its agent and managing general underwriter RMTS, Inc. ("RMTS"), Trustmark threatened to rescind the Contracts unless BAS paid RMTS additional amounts on behalf of Majestic.  Additionally, RMTS attempted to condition payment of certain valid and outstanding claims upon receipt of additional funds from Majestic's agent, BAS.

12.     During 2005 and 2006, Trustmark denied full or partial payment of several additional claims from 2005.

13.     With regard to many other 2005 stop loss claims, Trustmark failed to either pay or to deny the claims, and this failure continues to this day.  On many of these claims, Trustmark has never identified the reasons why these claims have yet to be paid (or denied), in violation of the Contracts and Nevada law.

14.     With regard to certain 2005 claims denied by Trustmark, Majestic, through its agent, BAS, sent timely appeals to which no response was ever offered, again in violation of the Contracts and Nevada law.

15.     Together the unpaid claims from 2005 exceed $800,000 (collectively referred to as the "2005 Stop Loss Claims").

16.     On or about April 10, 2006, representatives of Majestic's agent, BAS, met with representatives of Trustmark and its agent, RMTS, to discuss the fact that payment for the outstanding claims was long overdue.  BAS representatives were advised at that time that RMTS and Trustmark would investigate and respond to these concerns by April 24, 2006.  This was never done.

- 3 -

17.     Rather than responding to the concerns raised by Majestic and BAS, Trustmark attempted to initiate an audit of the 2004 and 2005 Policies on June 15, 2006.  Several pages of the audit request were missing, however, and this omission was not cured by Trustmark until July 11, 2006.

18.     Trustmark's audit was far broader and more burdensome than that which could be reasonably contemplated pursuant to the Contracts and/or Nevada law.

19.     The auditing requirements imposed by Trustmark and its agent, RMTS, were patently unreasonable and not designed to determine the validity of the claims in question.  To the contrary, the requirements were imposed in order to delay the resolution of the 2005 Stop Loss Claims, in violation of the provisions of the Contracts and Nevada law.

20.     As of December 2006, Majestic had provided all requested information to Trustmark's auditor.  At that time, the auditor informed Majestic that a site visit was the only remaining step to be completed in the audit, and the auditor continues to make this assertion to this day.

21.     Trustmark has delayed its auditor from conducting the site visit, in an attempt to further delay the completion of the audit process and the payment of monies owed to Majestic.

22.     Majestic has continuously requested that the site visit be performed so the audit can be completed.

23.     As of this date, Trustmark continues to prohibit its auditor from performing the site visit, and thus, concluding the audit process.  The audit process has therefore been at a standstill since December 2006, despite repeated requests from Majestic for Trustmark and its auditor to complete the process.

24.     Trustmark has intentionally delayed the processing of the 2005 Stop Loss Claims at issue in order to lengthen the period of time in which Trustmark can make use of the funds owed to Majestic.

25.     The extraordinarily broad requests made in the audit caused an unnecessary waste of time, money and resources for Majestic, the only purpose of which was to further delay payment of the claims at issue.

26.     Notwithstanding the oppressive requirements imposed by the audit, Majestic has fully complied with all requests and provided information and materials as promptly as possible given its available resources.

27.     At all times relevant hereto, Majestic paid all policy premiums due and owing to RMTS and/or Trustmark, and otherwise complied with its obligations under the Contracts at all times.

## COUNT I:  REQUEST FOR DECLARATORY RELIEF

Comes now Majestic, by counsel, and for its first count against Trustmark alleges and states as follows:

28.     Majestic restates the allegations contained in paragraphs 1 through 27 herein.

29.     A justiciable controversy exists between Majestic and Trustmark over the insurance coverage owed to Majestic pursuant to the 2004 and 2005 Stop Loss Claims referenced herein.

30.     The interests of Majestic and Trustmark are adverse.

31.     Majestic has a legally protected interest in this controversy insofar as it is owed more than $900,000 pursuant to the coverage in question.

32.    This controversy is ripe for adjudication, in that all claims information for the 2004 and 2005 Stop Loss claims has been submitted to Trustmark, and yet, as of this date, Trustmark has failed to pay the claims in dispute, despite repeated demands by Majestic.

Wherefore, Majestic respectfully requests a declaratory judgment from this Court finding that the unpaid amounts from the 2004 Stop Loss Claim, as well as the unpaid amounts from the 2005 Stop Loss Claims, are due and owing pursuant to the terms of the Contracts and the law of Nevada, and Majestic further requests an award of reasonable attorneys fees incurred in procuring this relief.

## COUNT II:  BREACH OF CONTRACT

Comes now Majestic, by counsel, and for its second count against Trustmark alleges and states as follows:

33.    Majestic restates the allegations contained in paragraphs 1 through 27 herein.

34.    Majestic entered into valid Contracts with Trustmark that required Trustmark to reimburse Majestic for certain losses under the Plan above the individual attachment points. *See* Composite Exhibit A.

35.    These Contracts further required that said reimbursements be made within "a reasonable period of time once satisfactory evidence of Payment of such Loss is received and approved by the Company."

36.    Trustmark failed to perform its obligations under the Contracts by denying approximately $101,305.77 of the 2004 Stop Loss Claim, after it received timely and sufficient evidence that such claim was payable in full under the Contracts.

37.    Trustmark also breached its Contracts with Majestic by denying full or partial payment with regard to the 2005 Stop Loss Claims that were payable under the Contracts, evidence of which was timely submitted to Trustmark.

38.     Trustmark also breached its Contracts with Majestic by failing to either pay or deny multiple stop loss claims from 2005 within a reasonable period of time, which failure continues to this day.

39.     These failures constituted material breaches of the Contracts.

40.     Majestic has performed all of its obligations under the Contracts.

41.     Majestic has been damaged insofar as it has not received the insurance coverage for which it contracted, in addition to incurring substantial losses due to the onerous requirements imposed by the needless audit initiated by Trustmark.

42.     Trustmark's aforementioned breaches of the Contracts were proximate causes of the damages Majestic has suffered.

Wherefore, Majestic prays for judgment in the form of compensatory damages, equitable relief, attorneys fees, costs, pre-judgment interest and all other proper relief.

### COUNT III:  UNFAIR PRACTICES IN SETTLING CLAIMS (N.R.S. 686A.310)

Comes now Majestic, by counsel, and for its third count against Trustmark alleges and states as follows:

43.     Majestic restates the allegations contained in paragraphs 1 through 27 herein.

44.     Trustmark violated the provisions set forth in N.R.S. 686A.310 by failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Contracts.

45.     Trustmark violated the provisions set forth in N.R.S. 686A.310 by failing to adopt or implement reasonable standards for the prompt investigation and processing of claims arising under the Contracts.

- 7 -

46.     Trustmark violated the provisions set forth in N.R.S. 686A.310 by failing to affirm or deny coverage of the 2005 Stop Loss claims made under the Plan within a reasonable time after Majestic and/or BAS submitted the proper notices of covered losses.

47.     Trustmark violated the provisions set forth in N.R.S. 686A.310 by failing to effectuate prompt, fair and equitable settlements of Majestic's stop loss claims after its liability for such claims had become reasonably clear.

48.     Trustmark violated the provisions set forth in N.R.S. 686A.310 by intentionally delaying the payment of claims by requiring Majestic to submit the same claims information in different formats over long periods of time, and also by requiring Majestic to submit information and materials which are irrelevant to the claims investigation.

49.     Trustmark violated the provisions set forth in N.R.S. 686A.310 by failing to promptly settle Majestic's claims where liability for such claims was reasonably clear under the policy, in order to influence Majestic to make concessions with regard to other aspects of the policy, specifically, payment of additional premiums.

50.     Trustmark violated the provisions set forth in N.R.S. 686A.310 by failing to promptly provide Majestic with a reasonable explanation for the denials of the Stop Loss Claims.

51.     As a direct and proximate result of Trustmark's actions listed in Paragraphs 43-50 above, Majestic has suffered monetary losses in excess of $900,000 (exclusive of interest and other costs owed to Majestic pursuant to Nevada law and the Contracts).

Wherefore, Majestic prays for judgment in the form of compensatory damages, punitive damages, equitable relief, attorneys fees, costs, pre-judgment interest and all other proper relief.

## COUNT IV: BAD FAITH

Comes now Majestic, by counsel, and for its fourth count against Trustmark alleges and states as follows:

52.     Majestic restates the allegations contained in paragraphs 1 through 27 herein.

53.     There was no reasonable basis for Trustmark's denial and/or "pending" of the Stop Loss Claims.

54.     Trustmark was aware, or recklessly disregarded, the fact that there was no reasonable basis upon which to deny or "pend" the Stop Loss Claims.

55.     Trustmark threatened to rescind the Contracts, without any justification, in order to effect payments of additional premiums by Majestic which were not part of the Contracts.

56.     Trustmark also attempted to condition payment of claims for which it clearly had liability upon receipt of additional monies from Majestic which were not owed under the Contracts.

57.     Trustmark also instructed its auditor not to complete the audit process, in order to further delay payment of the claims for which it clearly has liability.

58.     As a direct and proximate result of Trustmark's unreasonable denial of the aforementioned claims and other actions outlined herein, Majestic has suffered damages in excess of $900,000 (exclusive of interest and other costs owed to Majestic pursuant to Nevada law and the Contracts).

Wherefore, Majestic prays for judgment in the form of compensatory damages, punitive damages, equitable relief, attorneys fees, costs, pre-judgment interest and all other proper relief.

## COUNT V:  BREACH OF FIDUCIARY DUTY

Comes now Majestic, by counsel, and for its fifth count against Trustmark alleges and states as follows:

59.     Majestic restates the allegations contained in paragraphs 1 through 27 herein.

60.     Majestic contracted with Trustmark for stop loss insurance in order to gain protection, peace of mind and security against calamity, and Trustmark was at all times aware of

- 9 -

Majestic's purpose in securing said insurance. Therefore, Majestic had the right to expect trust and confidence in Trustmark's integrity and fidelity.

61.     As a result of this special relationship between Trustmark and Majestic, Trustmark owed a fiduciary duty to Majestic.

62.     Trustmark breached its fiduciary duty to Majestic by, among other things, denying and/or "pending" numerous Stop Loss Claims when it knew there was no reasonable basis for doing so.

63.     Trustmark also breached its fiduciary duty to Majestic by, among other things, misrepresenting to Majestic the requirements imposed by the Contracts, in an effort to justify the unwarranted audit it initiated and the unreasonable requests made therein.

64.     Trustmark also breached its fiduciary duty to Majestic by threatening to rescind the Contracts, without any justification, in order to effect payments of additional premiums by Majestic which were not part of the Contracts.

65.     Trustmark also breached its fiduciary duty to Majestic by attempting to condition payment of claims for which it clearly had liability upon receipt of additional monies from Majestic which were not owed under the Contracts.

66.     Trustmark also breached its fiduciary duty to Majestic by instructing its auditor to not complete the auditing process, in an effort to further delay making payments to which Majestic is entitled.

67.     As a direct and proximate result of the aforementioned breaches of duty, Majestic has suffered damages in excess of $900,000 (exclusive of interest and other costs owed to Majestic pursuant to Nevada law and the Contracts).

Wherefore, Majestic prays for judgment in the form of compensatory damages, punitive damages, equitable relief, attorneys fees, costs, pre-judgment interest and all other proper relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury as to all claims triable to a jury as of right.

Respectfully submitted,

**THE MAJESTIC STAR CASINO, LLC**

By: _____

John D. Burke (Atty No.6203918)

**ICE MILLER LLP**
200 West Madison, Suite 3500
Chicago, Illinois 60606
(312) 726-1567
*Attorneys for The Majestic Star Casino, LLC*

C/49759.1

## STOP LOSS INSURANCE CONTRACT

Trustmark Insurance Company, Lake Forest, Illinois ("Company") agrees to reimburse the Policyholder as outlined under the provisions of this Stop Loss Insurance Contract ("Contract").

**Policyholder:**     THE MAJESTIC STAR CASINO, LLC., BARDEN MISSISSIPPI GAMING, LLC., BARDEN COLORADO GAMING, LLC., BARDEN NEVADA GAMING, LLC.

**Contract Number:**     JI381

**Effective Date:**     January 1, 2004

**Anniversary Date:**     January 1, 2005
And the same day each year thereafter.

This Contract is legally binding between the Policyholder and the Company. The consideration for this Contract includes, but is not limited to, the Application and the payment of premiums as provided hereinafter.

The Policyholder is entitled to the reimbursement determined in this Contract if the Policyholder is eligible for insurance under the provisions of this Contract. Reimbursement is subject to the terms and conditions of this Contract.

The first premium is due on the first day of the Contract Period. Subsequent premiums are due on the first day of each month thereafter. The premium is not considered paid until the premium payment is received by the Company.

All periods of coverage will begin and end 12:01a.m. Standard Time at the principal office of the Policyholder.

This Contract is governed by the laws of the state of **NEVADA.**

The sections set forth on the following pages are a part of this Contract.

**IN WITNESS WHEREOF,** the Company has caused this Contract to be executed at Lake Forest, Illinois.

### TRUSTMARK INSURANCE COMPANY

**David McDonough**
**President & Chief Operating Officer**

**Frank G. Gramm**
**Corporate Secretary and General Counsel**

COUNTERSIGNED: _____
(Licensed Resident Agent - Where required by Law)

SL-0601 NV R01/03                     1


EXHIBIT
A

TABLE OF CONTENTS

<u>**Page**</u>

Schedule of Stop Loss ..................................................................................................................... 3

Definitions ..................................................................................................................................... 5

Duties of the Policyholder................................................................................................................ 8

Miscellaneous Provisions ............................................................................................................... 10

Exclusions ..................................................................................................................................... 13

Premiums and Factors ................................................................................................................... 15

Contract Termination...................................................................................................................... 16

Aggregate Stop Loss...................................................................................................................... 17

Specific Stop Loss.......................................................................................................................... 18

**Amendments/Endorsements**

      Advance Funding for Individual Stop Loss Contract Amendment.................................................. 19

## SCHEDULE OF STOP LOSS

Coverage specified herein is applicable only during the Contract Period from <u>January 1, 2004</u> to <u>December 31, 2004</u>, and is further subject to all terms and conditions of this Contract, unless annotated below.

**AGGREGATE STOP LOSS**       ☒ Yes       ☐ No

Benefit Period shall be limited to: Employee Benefit Plan Losses Incurred from <u>January 1, 2003</u> through <u>December 31, 2004</u>, and Paid from <u>January 1, 2004</u> through <u>December 31, 2004</u>.

Coverages applying to Aggregate Stop Loss include:
- ☒ Medical      ☒ Prescription Drug Card Program
- ☐ Dental Care      ☒ Mail Order Prescription Drug Card Program
- ☐ Vision Care      ☐ Weekly (Disability) Income
- ☐ Other_____

Aggregate Percentage Reimbursable (Excess of Attachment Point) <u>100%</u>

Monthly Aggregate Factors:      Composite
          Medical/Rx      <u>$458.88</u>

All coverages are combined for determination of Aggregate Stop Loss liability under the terms of this Contract.

Minimum Annual Aggregate Attachment Point <u>$10,969,068</u>
Maximum Employee Benefit Plan Losses per Covered Person per Benefit Period $<u>100,000</u>
Maximum Aggregate Benefit per Benefit Period $<u>1,000,000</u>
        (Excess of Annual Aggregate Attachment Point)

Aggregate Premium per Employee per month $<u>2.04</u>

**SPECIFIC STOP LOSS**       ☒ Yes       ☐ No

Benefit Period shall be limited to: Employee Benefit Plan Losses Incurred from <u>January 1, 2003</u> through <u>December 31, 2004</u>, and Paid from <u>January 1, 2004</u> through <u>December 31, 2004</u>.

Coverage applying to Specific Stop Loss include:
- ☒ Medical      ☒ Prescription Drug Card Program
- ☐ Dental Care      ☒ Mail Order Prescription Drug Card Program
- ☐ Vision Care      ☐ Weekly (Disability) Income
- ☐ Other_____

Specific Deductible (Per Person) $<u>100,000</u>
Specific Percentage Reimbursable (Excess of Deductible) <u>100%</u>

Lifetime Maximum Specific Benefit $<u>900,000</u>
        (per Covered Person in excess of the Specific Deductible)

Specific Premium per month:      Composite      <u>$28.60</u>

**SPECIAL LIMITATIONS:**

With respect to the Covered Person whose Name and/or Social Security Number is ███████████, the following alterations to the Schedule of Stop Loss apply:

Specific Deductible (per Covered Person) $<u>250,000</u>
Lifetime Maximum Specific Benefit $<u>750,000</u>
        (per Covered Person in excess of the Specific Deductible)

All other Schedule of Stop Loss and Contract provisions apply as stated.

With respect to the Covered Person whose Name and/or Social Security Number is ████████, the following alterations to the Schedule of Stop Loss apply:

With transplant:
Specific Deductible (per Covered Person) $300,000
Lifetime Maximum Specific Benefit $700,000
(per Covered Person in excess of the Specific Deductible)

All other Schedule of Stop Loss and Contract provisions apply as stated.

With respect to the Covered Person whose Name and/or Social Security Number is ████████, the following alterations to the Schedule of Stop Loss apply:

Specific Deductible (per Covered Person) $175,000
Lifetime Maximum Specific Benefit $825,000
(per Covered Person in excess of the Specific Deductible)

All other Schedule of Stop Loss and Contract provisions apply as stated.

With respect to the Covered Person(s) whose Name and/or Social Security Number(s) is/are listed on the Disclosure Statement dated **January 9, 2004**, the Actively At Work provision is waived.

All other Schedule of Stop Loss and Contract provisions apply as stated.

**THIRD PARTY ADMINISTRATOR:**  Benefit Administrative Systems
17475 Jovanna Drive
Suite 1B
Homewood, IL. 60430

Dated at _1:50 p.m. -PT_ this _17th_ day of _June_, 2004

Policyholder _Judith F. Tillett for Majestic Star Casino, LLC_

Title _Corporate Vice President, Human Resources_

Witness_____

SL-0601 NV R01/03                    4

## DEFINITIONS

**ACTIVELY AT WORK** means on the Effective Date of this Contract a Covered Person who is an Employee on a scheduled vacation or performing services for the Policyholder, at the location at which such services are normally performed, for 32 or more hours per week earning W-2 wages from the Policyholder which are the equivalent of at least the Federal Minimum Wage. Any Covered Person who is on Social Security Disability continuance or any other leave of absence who is confined in a medical facility on the Policyholder's Contract Effective Date shall not be considered **ACTIVELY AT WORK**.

A Covered Person who is an Employee shall not be considered Actively At Work until:
* he returns to active, full-time work at his customary place of employment for at least one complete work day, performing all of the normal job duties required and expected of his position.

A Covered Person's dependent shall not be considered **ACTIVELY AT WORK** if he is hospital confined or unable to do the normal activities of a person of like age on the Effective Date of this Contract. The dependent shall not be considered **ACTIVELY AT WORK** until:
* he is released from the hospital; and
* he is also released by his attending physician to do, and he in fact performs, his normal activities.

If a Covered Person's health care coverage under the Plan is being continued in accordance with federal, state or local law on the Effective Date, he will not be considered Actively At Work unless specifically agreed to by the Company in writing.

**AGGREGATE STOP LOSS** means the amount that the Company agrees to reimburse the Policyholder after the end of the Contract Period for Losses Paid by the Policyholder over and above the Policyholder's Annual Aggregate Attachment Point as set forth in the Schedule of Stop Loss, and subject to the terms and conditions of the Contract.

**ANNUAL AGGREGATE ATTACHMENT POINT** for any one Contract Period means the greater of:
* the sum of the Monthly Aggregate Attachment Point; or
* the Minimum Annual Aggregate Attachment Point.

**BENEFIT PERIOD** means the period of time in which a claim must be incurred by the Covered Person and Paid by the Plan to be eligible for reimbursement under the Policyholder's Stop Loss  Contract. This period does not alter the Effective Date, Contract Period, or waive the Contract's eligibility requirements.

**CONTRACT PERIOD** means the specified period in the Schedule of Stop Loss, beginning no earlier than the Effective Date of the Contract and continuing until coverage terminates in accordance with the Contract Termination provision.

**COVERED PERSON** means any one individual entitled to benefits under the specific terms and provisions of the Employee Benefit Plan.  Only eligible classes and individual(s) whose initial and continued eligibility is fully described in the copy of the Plan on file with the Company shall be considered a Covered Person.

**COVERED UNIT** means the following person or persons who are covered under the Plan:
* an Employee;
* an Employee with dependents; or
* such other defined unit as agreed upon between the Company and the Policyholder.

**EMPLOYEE BENEFIT PLAN** (also known as the Plan) means the self-funded Plan of benefits provided by the Policyholder for Covered Persons.  A copy of the Plan or plans in effect on the Contract Effective Date is attached to the Application and made a part of this Contract.

**HONORED** means the date a draft, check or electronic fund transfer is processed by the Policyholder's bank and funds are issued to the payee.

**INCURRED** means with respect to medical services and supplies, the date on which the Services Are Rendered or supplies are received by the Covered Person.  For inpatient hospital/facility charges and professional fees provided during an inpatient stay a claim is considered incurred on the date the Covered Person is discharged from the hospital/facility.

**LOSS, LOSSES** means Reasonable and Customary Charges actually Paid by the Policyholder for eligible benefits under the Plan.

**LATE ENTRANT** is an eligible Covered Person who requests coverage in the Employee Benefit Plan more than 30 days after the date the person was first eligible to enroll.  A person shall not be considered a Late Entrant if he:
- was covered under another Policyholder's group health plan at the time of initial enrollment; and
- stated at the time of initial enrollment that coverage under another Policyholder's group health plan was the reason for declining coverage; and
- has lost coverage under another Policyholder's group health plan due to termination of employment, termination of the plan, death of a spouse or divorce; and
- requests coverage within 30 days after termination of such coverage; or
- applies for coverage on a spouse or minor child within 30 days of a court order requiring coverage be provided under the Plan.

**MAXIMUM AGGREGATE BENEFIT** means the maximum amount reimbursable by the Company to the Policyholder for the Contract Period.

**MINIMUM ANNUAL AGGREGATE ATTACHMENT POINT** means the lowest amount of the Policyholder's responsibility for the Contract Period, as set forth in the Schedule of Stop Loss, for Losses under the Plan.

**MONTHLY AGGREGATE ATTACHMENT POINT** means the total number of Covered Units for that given Contract month multiplied by the corresponding Monthly Aggregate Factors as specified in the Schedule of Stop Loss.  However, in the event of a reduction in the number of Covered Units under the Plan, the Monthly Aggregate Attachment Point will not be reduced more than five percent from the preceding Monthly Aggregate Attachment Point.

**PAY, PAID, PAYMENT** means actually funded by means of drafts, checks or electronic fund transfers that are issued by the Policyholder, received by the payee and Honored.  When the preceding requirements are met, the date of payment is the date the draft, check or electronic fund transfer is issued, provided it is delivered and Honored within 30 days of the issued date.  In the event the draft, check or electronic fund transfer is not Honored within 30 days of issue, the date of payment becomes the date the draft, check or electronic fund transfer is Honored.

**POLICYHOLDER** is the legal entity to whom the Company has issued the Contract.

**REASONABLE AND CUSTOMARY CHARGE(S)** means the usual charge made by the provider of care for a service, not to exceed the usual charge made by the majority of like providers for the same or like service in the same geographical area in which the service or treatment is performed.  If the Plan has a contracted fee arrangement with certain health care providers, "Reasonable and Customary Charges" shall mean the lessor of the applicable fee as defined in that fee arrangement contract or the usual charge made by the majority of like providers for the same or like service in the same geographical area in which the service or treatment is performed.

**SPECIFIC DEDUCTIBLE** means the amount of the Policyholder's responsibility for each Covered Person under the Plan during the Benefit Period as specified in the Schedule of Stop Loss.  For each Covered Person, the Specific Deductible will apply separately to each Benefit Period.  If this Contract terminates during any Contract Period, the Specific Deductible will be calculated as if this Contract had remained in effect for the full Contract Period.

**SPECIFIC STOP LOSS** means the amount the Company will reimburse the Policyholder for eligible Losses Paid by the Policyholder over and above the Specific Deductible for a Covered Person while this Contract is in force as set forth in the Schedule of Stop Loss, and subject to the terms, conditions and limitations of this Contract.

**SERVICES ARE RENDERED** means the date the services were provided.

**THIRD PARTY ADMINISTRATOR** means a firm or person which has been retained by the Policyholder to pay claims and/or provide administrative services on behalf of the Policyholder Plan. Administrator in this definition does not have the same meaning as the term "Plan Administrator" used in the Employee Retirement Income Security Act of 1974 (ERISA), unless the Policyholder has specifically appointed their Administrator to perform as such.

## DUTIES OF THE POLICYHOLDER

**DUTIES OF THE POLICYHOLDER** in this Contract are conditions precedent to the Company's liability.  No reimbursement shall be payable unless, the conditions precedent have been met.

**THIRD PARTY ADMINISTRATOR:**  The Policyholder may retain a Third Party Administrator, who is approved by the Company, to act as the Policyholder's agent in performing administrative duties on behalf of the Policyholder.  Without waiving any of its rights under this Contract, and without making the designated Third Party Administrator a party to this Contract, the Company and the Policyholder agree to recognize the Third Party Administrator as an agent for the Policyholder.

**PAYMENT OF CLAIMS:**  The Policyholder must Pay all eligible claims under the Plan within forty-five days from the date adequate proof is provided to the Policyholder.  If the Policyholder fails to pay claims within the forty-five day time limit, that claim will not count towards the satisfaction of either the Annual Aggregate Deductible or the Specific Deductible or be reimbursed under this Contract and the Company will have the option to terminate this Contract.

**NOTICE OF CLAIM:**  The Policyholder must give written notice of claims to the Company on the Company's customary proof of loss form within five days of the date the Policyholder and their agents become aware of the existence of facts which would reasonably suggest the possibility that Losses will be incurred which are covered by this Contract, and which are equal to or exceed fifty percent (50%) of the Specific Deductible or are expected to exceed that amount.  Policyholder's written Proof of Loss must be submitted to the Company within 90 days of it being Paid by the Policyholder.

In addition, the Policyholder must notify the Company immediately when it discovers any claim which falls into one of the following categories:

* premature infants;
* severe automobile or motorcycle accidents;
* severe head injuries;
* organ transplants;
* cancer treatment;
* cardiac conditions exceeding 10 days confinement;
* complications following gastric bypass or stomach stapling;
* severe burns;
* psychiatric confinements;
* spinal cord injuries; and
* AIDS (Acquired Immune Deficiency Syndrome)

**LITIGATION:**  A copy of any document filed by or against the Policyholder in any court in connection with litigation under the Plan must be promptly furnished to the Company.  The Policyholder shall pay all attorneys' fees and any punitive or exemplary damages incurred under this Contract by reason of any litigation in which the Company shall, without its fault, become involved through or on account of this Contract or the Plan.

**TAXES:**  In the event any taxing authority which has jurisdiction over either of the parties finds that Additional Taxes must be paid in respect of this Contract, the Plan, or related matters, the Policyholder shall be responsible for such Additional Taxes.  An amount equal to the total amount to be paid because of such Additional Taxes shall be promptly paid by the Policyholder to the Company upon written request.  "Additional Taxes" means those which are in addition to the premium taxes paid by the Company with respect to this Contract.

**REPORTING REQUIREMENTS:**  The Policyholder will submit by the 12th day of each month all proof of Loss reports and supporting documents including, but not limited to, a monthly summary of all Losses Paid by the Policyholder and total number of Covered Units covered under the Plan during the prior month.  This will include Payments during the month on all individual claims that have exceeded 50% of the Specific Deductible amount.  The Policyholder will be responsible for the investigation, auditing, calculating and the Payment of all claims under the Plan.

SL-0601 NV R01/03                                        8

**RECORDS:** The Policyholder will maintain records of all Covered Persons under the Plan during the Contract Period and for a period of seven years after the termination of this Contract. The Policyholder shall make such records available to the Company as needed to evaluate its liability under this Contract.

The Policyholder will maintain a separate record of any and all amounts Paid in excess of benefits eligible under the Plan.

**TERMINATION:** The Policyholder will immediately notify the Company if the Policyholder's Plan is terminated.

**TIMELINESS:** Time is of the essence. The Policyholder must comply with all deadlines stated in this Contract.

## MISCELLANEOUS PROVISIONS

**AMENDMENT TO THE PLAN:** No Plan change will affect this Contract without the Company's written consent. Written notice of the Plan change must be given to the Company at least thirty-one days prior to the effective date of the change. If such advance written notice is not received and accepted, the Company's reimbursement may be made as if the Plan had not been amended, at the Company's discretion. The Company's reimbursement will be made according to the amended Plan, once the notice is received and accepted.

**AUDITS:** The Company will have the right:

- to inspect, copy and audit all records and procedures of the Policyholder and Third Party Administrator developed and maintained for the Plan that are applicable to the administration of the Stop Loss Insurance Contract, and
- to require, upon request, proof of records satisfactory to the Company that Payment has been made to the Covered Person or the provider of such services or benefits which are the basis for any Loss by the Policyholder hereunder.

**CHANGES:** Only the President, a Vice President, or the Secretary of the Company has the authority to alter this Contract or to waive any of the Company's rights and then only in writing. No such alteration of this Contract shall be valid unless endorsed on or attached to this Contract. No Agent, Broker, or Third Party Administrator has the authority to alter this Contract or to waive any of its provisions, including premiums shown in the Schedule of Stop Loss.

**CLERICAL ERROR:** Clerical error, inadvertent delay or omission in keeping any records pertaining to the coverage, whether by the Policyholder or by the Company, will not invalidate coverage otherwise validly in force nor continue coverage otherwise validly terminated, provided such clerical error, inadvertent delay or omission is not prejudicial to the Company and is rectified promptly upon discovery.

**CONCEALMENT, FRAUD:** This entire Contract will be void if, the Policyholder or its agent has concealed or misrepresented any material fact or circumstance concerning this Contract, including any claim or any case of fraud by the Policyholder or its Agent relating to this Contract.

**ENTIRE CONTRACT:** The entire Contract between the Company and the Policyholder will consist of this Contract, the Application (including the proposal and Disclosure Statement and any other information submitted by the Policyholder required for underwriting approval), letters of understanding, any continuance requests, approved amendments, the Policyholder's Plan Document which is on file with the Company, and the Trustmark Stop Loss Administrator Application.

**INSOLVENCY:** The insolvency, bankruptcy, financial impairment, receivership, voluntary plan of arrangement with creditors, or dissolution of the Policyholder or the Policyholder's Third Party Administrator will not impose upon the Company any liability other than the liability defined in this Contract. In particular, the insolvency of the Policyholder will not make the Company liable to the creditors of the Policyholder, including Covered Persons under the Plan.

**LEGAL ACTION:** No legal action may be brought against the Company until there has been full compliance with all the terms of this Contract. All Contract terms will be interpreted under the laws of the state shown on page 1 of this Contract. No legal action may be brought to recover on this Contract within 60 days after written proof of loss has been furnished. No legal action may be brought after three (3) years from the time written proof of loss is required to be furnished unless the laws of the state shown on page 1 of this Contract provide otherwise. Venue for any legal action filed by either party under this Contract, shall be located in Chicago, Illinois.

**LIABILITY:** The Company will have neither the right nor the obligation under this Contract to directly pay any Covered Person or provider of professional or medical services. The Company's sole liability is to the Policyholder, subject to the terms and conditions of this Contract. Nothing in this Contract shall be construed to permit a Covered Person to have a direct right of action against the Company. The Company will not be considered a party to the Employee Benefit Plan or to any supplement or amendment to it. The Policyholder may not assign reimbursement under this Contract, and the Company will not recognize any such assignment.

**MISSTATED DATA:** The Company has relied upon the underwriting and Third Party Administrator information provided by the Policyholder, or the Policyholder's Agent, in the issuance of this Contract. Should subsequent information become known which, if known prior to issuance of this Contract, would have affected the rates, deductibles, terms or conditions for coverage, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Policyholder.

**NONCONFLICTING LANGUAGE WITH PLAN AND STOP LOSS CONTRACT:** Any provision in the Plan which purports to alter or conflict with the terms, conditions or provision of this Contract shall be null and void insofar as it might affect the Company's liability under this Contract.

**NOTICE:** For the purpose of any notice required from the Company under the provisions of this Contract, notice to the Policyholder's Third Party Administrator shall be considered notice to the Policyholder and notice to the Policyholder shall be considered notice to the Policyholder's Third Party Administrator. Notice from the Policyholder to the Policyholder's Third Party Administrator and notice from the Third Party Administrator to the Policyholder shall not be considered notice to the Company.

**OTHER COVERAGE:** The reimbursement provided by this Contract is in excess of other coverages such as group insurance, excess insurance, reinsurance, plan benefits including insurance or benefits established by any federal, state or local law.

**OVER-REIMBURSEMENT, THIRD PARTY RECOVERY, OTHER CARRIER LIABILITIES:** Amounts Paid which are reimbursed by, or payable by other insurance companies, reinsurers or third parties will not be included in Aggregate Stop Loss or Specific Stop Loss.

- Should there be a recovery of Paid claims due to a subrogation, reimbursement, or third party liability provision in the Plan, the amount of recovered Plan payments will not apply to Specific Stop Loss or Aggregate Stop Loss. The Company will not reimburse amounts recovered. If the Company reimburses the Policyholder for amounts that are later recovered from a third party payer, the amount recovered must be refunded by the Policyholder to the Company to the extent of any reimbursement, whether or not this Contract is still in force on the date the recovery is received.
- Should there be an over-reimbursement due to clerical or other error, the over-reimbursement must be refunded.
- If benefits for a Covered Unit are payable under an extension of benefits provision of a previous insurance carrier, the Company will not accept responsibility for the expenses payable under the prior coverage for such individuals.
- Any Payment made in error may be recovered from the Policyholder. At the Company's option, we may offset the overpayment against future benefit payments. The acceptance of premium or continued reimbursements under the Plan shall not constitute a waiver of Our rights under this section. Recovery or offset shall be in addition to any other remedy available to Us at law or in equity.

**PARTIES TO THE CONTRACT:** The parties to this Contract are the Policyholder and the Company. The Company's sole liability under this Contract is to the Policyholder. This Contract does not create any right or legal relation between the Company and a Covered Person under the Employee Benefit Plan. This Contract will not be deemed to make the Company a party to any agreement between the Policyholder and any Third Party Administrator.

**RENEWAL:** At the end of the Contract Period, but only by mutual agreement of the Policyholder and the Company, this Contract may be renewed for another Contract Period. The renewal may be subject to new premium rates, new underwriting terms, a new Benefit Period and new Contract terms. Company approval of a continuance request by the Policyholder for Stop Loss Insurance resulting in a new Contract Period, Benefit Period and new Contract terms and conditions will effect a new Schedule of Stop Loss.

**SEVERABILITY CLAUSE:** Any clause deemed void, voidable, invalid, or otherwise unenforceable, whether or not such a provision is contrary to public contract, will not render any of the remaining provisions of this Contract invalid.

**SUBROGATION:** The Policyholder has the sole obligation to pursue, to the full extent of the legal remedies available to it, all claims that it may have against third parties when they arise out of an occurrence which results in a Loss. Should the Policyholder fail to pursue a claim that it may have against a third party, and should it not otherwise pursue all legal remedies available to it and should the Company then become liable to make payments under the terms and conditions of this Contract, then the Company shall determine its payment under this Contract as if the Policyholder had in fact pursued its legal remedies and had been successful.

**WAIVER:** Failure of the Company to insist upon the Policyholder's strict compliance with any requirement or condition of this Contract at any time or under any circumstance shall not constitute a waiver of such requirements or condition by the Company at any time under the same or different circumstances.

## EXCLUSIONS

Losses under the Plan shall not include, and the Company shall not be liable for, any of the following.
1.  Court costs.
2.  Interest upon judgments.
3.  Cost of investigations or other claims administration costs.
4.  Legal expenses.
5.  Punitive or other damages assessed against the Policyholder, Third Party Administrator or other party associated with the Plan.
6.  Salaries paid to Employees of the Policyholder or of the Third Party Administrator and any other Policyholder contracted services.
7.  Amounts Paid for Covered Persons who are not Actively At Work.
8.  All claims for hospital expense for confinements that commenced prior to the Benefit Period of this Contract. This exclusion shall apply even when the date of discharge occurs after the Benefit Period begins; and the confinement would otherwise be considered a service incurred for purposes of this Contract.
9.  Amounts Paid for
    -   any individual who is not eligible for benefits under the Plan;
    -   any services or supplies, rendered to a Covered Person, when such service or supply is not a covered service under the Plan.

10. Amounts Paid for Covered Persons which are in excess of Reasonable and Customary charges.
11. Amounts Paid under the Plan for a Covered Unit whose evidence of good health as a Late Entrant is not approved by the Company.
12. Amounts Paid under the Plan which would not have been Paid if benefits were coordinated according to the National Association of Insurance Commissioners (NAIC) Model COB Guidelines.
13. Amounts Paid for treatment not due to sickness or injury, including cosmetic surgery or any treatment to correct complication of cosmetic surgery except cosmetic surgery required to correct birth defect of a child born to or adopted by a Covered Person while his coverage under the Plan is in force; or cosmetic surgery to correct the result of a non-cosmetic surgery that results in deformity, trauma, infection or disease of the involved party.
14. Amounts Paid as benefits for alcohol or drug abuse and mental or nervous disorders in excess of the lessor of:
    -   $50,000 Paid to a Covered Person during a Contract year; or
    -   the amount payable under the Plan.

15. Claims arising out of or caused by or contributed to or in consequence of war or act of war, declared or not, hostilities, invasion or civil war.
16. Claims which were incurred prior to the start of the first Contract year, whether advised of at that time or later, unless specifically covered by the terms of this Contract.
17. Claims arising out of or in the course of any occupation or employment for wage or profit.
18. Claims for which the Covered Unit is entitled to benefits under any Workers' Compensation or Occupational Disease Act or Law.
19. Claims arising out of nuclear accident.
20. Any managed care discount, negotiated discount, audit savings or other discount or savings forfeited or waived by the Policyholder for any reason, including but not limited to untimely payment.

21. Experimental or Investigative services, treatments, procedures, technology, supplies or drugs which:
    - have not been approved by the Federal Food and Drug Administration;
    - are not widely recognized and accepted as effective, safe and appropriate for the sickness or injury by the medical profession in the U.S.;
    - are in the research or investigative stage, or conducted for research or similar purposes; or
    - the patient has been asked to sign or has signed a release or other document indicating that the treatment is Experimental or Investigative or other term of similar meaning.

    In determining any of the above, the Company will rely on recognized medical sources such as, but not limited to, the American Medical Association, including the Council of Technology Assistance Program and the Council on Medical Special Services; the National Institute of Health; Medicare; the Food and Drug Administration and other accepted medical authorities and sources

22. The Company shall not be liable for:
    - Amounts Paid for claims submitted to or Paid by the Plan, more than 365 days after the services were incurred.
    - Amounts Paid for Losses where evidence of Payment satisfactory to the Company of such Loss was submitted to the Company more than 90 days after the Benefit Period.

23. Notwithstanding the clerical error provision under Miscellaneous Provisions, this Contract shall exclude any amounts Paid for Covered Persons, whose coverage under the Consolidated Omnibus Budget Reconciliation Act (hereafter referred to as COBRA) is continued beyond the timeframes specified by federal law for any reason including clerical error of the Policyholder; who do not receive a valid COBRA extension offer within the 30 days immediately following a COBRA qualifying event; who fail to make a valid, signed COBRA election within the 60 days immediately following the receipt of COBRA election rights from the Policyholder; or who fail to remit COBRA premium within the period specified by federal law. The Company will require written documentation that these requirements have been satisfied.

## PREMIUMS AND FACTORS

**PAYMENT OF PREMIUMS:** No coverage under this Contract will be in effect until the first premium is paid. For coverage to remain in effect, each subsequent Payment as shown in the Schedule of Stop Loss for the applicable Contract Period, must be paid on or before its due date. The Policyholder is responsible for the Payment of its premiums. Premiums are not considered paid until the premium Payment is received by the Company.

**GRACE PERIOD:** A Grace Period of 31 days from the due date will be allowed for the Payment of each premium after the first premium Payment. During the Grace Period, the coverage will remain in effect provided the premium is paid before the end of the Grace Period. Should a premium otherwise due, not be paid during the Grace Period, this Contract will terminate without further notice, as of the date for which premiums were last paid.

**PREMIUM AMOUNT:** The Policyholder's premiums will be calculated using rates determined by the Company as set forth in the Schedule of Stop Loss. The amount of total premium due is the sum obtained by multiplying each rate shown in the Schedule of Stop Loss by the Covered Units to which the rate applies.

The Policyholder will be liable for any premium taxes assessed at any time against the Company above any taxes which may be payable on the premium received by the Company.

Any correction to the Specific or Aggregate premium of the Covered Units for the preceding Contract Period must be reported to the Company within sixty days after the last Contract month of the preceding Contract Period.

**PREMIUM RATE AND MONTHLY AGGREGATE FACTOR CHANGE:** The Company may change the Policyholder's premium rate or Monthly Aggregate Factor on any of the following:

- the date when the terms of this Contract are changed; or
- the date the Policyholder adds or deletes subsidiary or affiliated companies or divisions; or
- the date of any revision to the Employee Benefit Plan; or
- the date the geographic area in which the Policyholder has Employees or the nature of business in which the Policyholder is engaged in changes; or
- The date there is a change in enrollment exceeding 10% of the first month's enrollment of the current Contract Period or the 9th month of the prior Contract Period.

The Company reserves the right to recalculate the premium rate and the Monthly Aggregate Factor for the Contract Period, if there is more than a ten percent (10%) variance between:

- the average monthly Paid claims under the Plan for the last two months of the prior Contract Period; and
- the average monthly Paid claims under the Plan for the first ten months of the prior Contract Period.

## CONTRACT TERMINATION

This Stop Loss Insurance Contract will continue in effect until the end of the Contract Period, unless coverage is terminated as set forth below.

This Contract and all benefits will terminate upon the earliest of the following dates:
* on the due date of any premium which remains unpaid at the end of the Grace Period; or
* the premium due date next following receipt by the Company of written notice from the Policyholder that this Contract is to be terminated; or
* the date of termination of the Employee Benefit Plan; or
* the date the Policyholder suspends active business operations or is placed in bankruptcy or receivership; or
* the date the Policyholder dissolves; or
* the date the Third Party Administrator is changed.

This Contract may also be terminated at the Company's option on:
* the date the number of Covered Units under the Employee Benefit Plan becomes less than seventy-five;
* the date the Policyholder fails to perform the Duties of the Policyholder as set forth in this Contract; or
* the date the Third Party Administrator is disapproved by the Company.
* failure of the Policyholder to adequately fund underlying Employee Benefit Plan claims within 45 days from the date adequate proof is provided to the Policyholder.

The Company will not refund any portion of the premium paid by the Policyholder whose Plan terminated during the Contract Period.

## AGGREGATE STOP LOSS

**COVERAGE PROVISION:** If the Policyholder's Losses for the Benefit Period, stated in the Schedule of Stop Loss, exceeds the Annual Aggregate Attachment Point for the Contract Period, the Company will reimburse the Policyholder, subject to the terms and conditions of this Contract including the limits set forth in the Schedule of Stop Loss, an amount;

- equal to the Aggregate Percentage Reimbursable times the amount by which Losses exceed the Annual Aggregate Attachment Point; and
- not to exceed the Maximum Employee Benefit Plan Losses per Covered Person per Benefit Period; and
- not to exceed the Maximum Aggregate Benefit per Benefit Period.

**CONDITIONS:** If a Policyholder's coverage terminates before the end of the Contract Period:

- the Annual Aggregate Attachment Point will be deemed not satisfied; and
- the Company will not be liable for any Aggregate Deductible reimbursement.

**CLAIM SETTLEMENTS:** After the end of the Benefit Period, the Company will reimburse the Policyholder for the Aggregate Stop Loss within a reasonable period of time once satisfactory evidence of Payment of such Loss is received and approved by the Company.

While the determination of benefits under the Plan is the sole responsibility of the Policyholder, the Company reserves the right to interpret the terms and conditions of the Plan as they apply to this Stop Loss Insurance Contract. If Company finds that any Payment was not made in accordance with the terms of the Plan, or is not an eligible benefit under the Plan, the Company may exclude such Payment from Losses. The Company will have the sole authority to reimburse or deny Losses under this Contract.

## SPECIFIC STOP LOSS

**COVERAGE PROVISION:** If the Policyholder's Losses for the Benefit Period, as shown in the Schedule of Stop Loss, exceeds the Specific Deductible, the Company will reimburse the Policyholder, subject to the terms and conditions of this Contract including the limits in the Schedule of Stop Loss, an amount:

- equal to the Specific Percentage Reimbursable of Specific Stop Loss times the amount by which Losses exceed the Specific Deductible amount; but
- not to exceed the Lifetime Maximum Specific Benefit.

**CONDITIONS:** Losses for any Covered Person during the Contract Period will be determined according to the Benefit Period as shown in the Schedule of Stop Loss.

The Specific Deductible amount as shown in the Schedule of Stop Loss applies separately to each Covered Person during a Benefit Period.

**CLAIM SETTLEMENTS:** The Company will reimburse the Policyholder for a Specific Stop Loss as herein provided, within a reasonable period of time once satisfactory evidence of Payment of such Loss is received and approved by the Company.

While the determination of benefits under the Plan is the sole responsibility of the Policyholder, the Company reserves the right to interpret the terms and conditions of the Plan as they apply to the Stop Loss Insurance Contract. If Company finds that any Payment was not made in accordance with the terms of the Plan, or is not an eligible benefit under the Plan, the Company may exclude such Payment from Losses. The Company will have the sole authority to reimburse or deny Losses under this Contract.

**TRUSTMARK INSURANCE COMPANY**
**Advanced Funding for Individual Stop Loss Contract Amendment**

The Definition section of the Stop Loss Contract will be revised as follows:

**Loss, Losses** means Reasonable and Customary charges determined to be payable by the Policyholder for eligible benefits under the Plan.

The term Advance Funding shall be added and defined as follows:

**Advanced Funding** shall mean the process by which we issue funds to you equal to the amounts eligible under your Plan as Covered Benefits for a Covered Person during a Contract Period after:

- You have Paid an amount equal to the Individual Stop Loss Deductible for an Individual during a Contract period, and

- You have Losses greater than $10,000 above the Individual Stop Loss Deductible which have not been Paid.

Except as set forth herein, all terms, conditions, and provisions of the Policyholder's Stop Loss Contract will apply.

On the conditions that all the provisions of the Stop Loss Contract and conditions set forth herein have been followed, we agree to provide you with Advance Funding. Before a claim will be approved for Advance Funding, we must receive satisfactory proof of claim eligibility, including all information requested by Company to determine Company's liability for the claim. Any claims approved for Advanced Funding by Company will be considered reimbursed by Company and will not be further eligible for reimbursement at time of payment under the Stop Loss Contract.

<u>Limitations</u>

- Advance Funding is only available while the Stop Loss Contract is in force.

- Advance Funding is only available for Losses greater than $10,000 over the Individual Stop Loss Deductible.

- Advance Funding is not available during the last 30 days of the Contract Period.

- Policyholder must fund, via mail or electronic funds transfer, the claim for which Advance Funding is requested within 10 business days of receipt of Advance Funding from Company. If such payment is not made by Policyholder within 10 days, Policyholder shall immediately refund to Company the funds advanced by Company to Policyholder and Company may revoke Advance Funding privileges.

- It is the Policyholder's sole responsibility to request and apply Advance Funding in a manner that will secure appropriate provider discounts. In the event Policyholder cannot fund a claim in time to secure appropriate provider discounts, Company will not be liable for the amount that the discounts would have been if the provider had been timely paid.

- It is the Policyholder's sole responsibility to request and apply Advance Funding in a manner consistent with all current Plan and Contract provisions and applicable state and federal laws. In the event the Policyholder cannot request and receive Advance Funding from Company in time to meet any provision of the Plan, Contract or applicable law or secure appropriate provider discounts, Policyholder must immediately Pay all Losses. No provision herein shall be deemed to alter the definition of Pay, Paid, or Payment in the Stop Loss Contract, nor will it change any payment requirement contained therein, including but not limited to the denial of:

  - Losses not Paid by Policyholder within the Benefit Period

  - Losses not Paid by the Policyholder within the 45 day time limit specified in PAYMENT OF CLAIMS.

SL-0601 NV R01/03                  19

## STOP LOSS INSURANCE CONTRACT

Trustmark Insurance Company, Lake Forest, Illinois ("Company") agrees to reimburse the Policyholder as outlined under the provisions of this Stop Loss Insurance Contract ("Contract").

**Policyholder:**    **THE MAJESTIC STAR CASINO, LLC., BARDEN MISSISSIPPI GAMING, LLC., BARDEN COLORADO GAMING, LLC., BARDEN NEVADA GAMING, LLC.**

**Contract Number:**    **JI381 (replaces Contract Number JI381 effective January 1, 2004)**

**Effective Date:**    **January 1, 2005**

**Anniversary Date:**    **January 1, 2006**
    And the same day each year thereafter.

This Contract is legally binding between the Policyholder and the Company. The consideration for this Contract includes, but is not limited to, the Application and the payment of premiums as provided hereinafter.

The Policyholder is entitled to the reimbursement determined in this Contract if the Policyholder is eligible for insurance under the provisions of this Contract. Reimbursement is subject to the terms and conditions of this Contract.

The first premium is due on the first day of the Contract Period. Subsequent premiums are due on the first day of each month thereafter. The premium is not considered paid until the premium payment is received by the Company.

All periods of coverage will begin and end 12:01a.m. Standard Time at the principal office of the Policyholder.

This Contract is governed by the laws of the state of **NEVADA**.

The sections set forth on the following pages are a part of this Contract.

**IN WITNESS WHEREOF**, the Company has caused this Contract to be executed at Lake Forest, Illinois.

## TRUSTMARK INSURANCE COMPANY


**David McDonough**
**President & Chief Operating Officer**

**Warren R. Schreier**
**Corporate Secretary**


COUNTERSIGNED: _____

    (Licensed Resident Agent - Where required by Law)

## TABLE OF CONTENTS

**Page**

Schedule of Stop Loss ..................................................................................................................... 3

Definitions ....................................................................................................................................... 5

Duties of the Policyholder .............................................................................................................. 7

Miscellaneous Provisions .............................................................................................................. 8

Exclusions ..................................................................................................................................... 11

Premiums and Factors ................................................................................................................. 13

Contract Termination ................................................................................................................... 14

Specific Stop Loss ........................................................................................................................ 15

**Amendments/Endorsements**

     Advance Funding for Individual Stop Loss Contract Amendment ............................................ 16

## SCHEDULE OF STOP LOSS

Coverage specified herein is applicable only during the Contract Period from **January 1, 2005** to **December 31, 2005**, and is further subject to all terms and conditions of this Contract, unless annotated below.

**SPECIFIC STOP LOSS**        ☒ Yes        ☐ No

Benefit Period shall be limited to: Employee Benefit Plan Losses Incurred from **January 1, 2004** through **December 31, 2005** and Paid from **January 1, 2005** through **December 31, 2005**.

Coverage applying to Specific Stop Loss include:
- ☒ Medical        ☒ Prescription Drug Card Program
- ☐ Dental Care     ☒ Mail Order Prescription Drug Card Program
- ☐ Vision Care     ☐ Weekly (Disability) Income
- ☐ Other_____

Specific Deductible (Per Person) $100,000
Specific Percentage Reimbursable (Excess of Deductible) 100%

Lifetime Maximum Specific Benefit $900,000
        (per Covered Person in excess of the Specific Deductible)

Specific Premium per month:        Composite        $31.32

**SPECIAL LIMITATIONS:**

With respect to the Covered Person whose Name and/or Social Security Number is ████████ ████████, the following alterations to the Schedule of Stop Loss apply:

Specific Deductible (per Covered Person) $145,000
Lifetime Maximum Specific Benefit $855,000
        (per Covered Person in excess of the Specific Deductible)

All other Schedule of Stop Loss and Contract provisions apply as stated.

With respect to the Covered Person whose Name and/or Social Security Number is ████████, the following alterations to the Schedule of Stop Loss apply:

Specific Deductible (per Covered Person) $150,000
Lifetime Maximum Specific Benefit $850,000
        (per Covered Person in excess of the Specific Deductible)

All other Schedule of Stop Loss and Contract provisions apply as stated.

With respect to the Covered Person whose Name and/or Social Security Number is ████████, the following alterations to the Schedule of Stop Loss apply:

Specific Deductible (per Covered Person) $150,000
Lifetime Maximum Specific Benefit $850,000
        (per Covered Person in excess of the Specific Deductible)

All other Schedule of Stop Loss and Contract provisions apply as stated.

**THIRD PARTY ADMINISTRATOR:**    Benefit Administrative Systems

Suite 1B

17475 Jovanna Drive

Homewood, IL.  60430

Dated at _____ this _____ day of _____, 2005

Policyholder _____

Title _____

Witness_____

## DEFINITIONS

**BENEFIT PERIOD** means the period of time in which a claim must be incurred by the Covered Person and Paid by the Plan to be eligible for reimbursement under the Policyholder's Stop Loss Contract. This period does not alter the Effective Date, Contract Period, or waive the Contract's eligibility requirements.

**CONTRACT PERIOD** means the specified period in the Schedule of Stop Loss, beginning no earlier than the Effective Date of the Contract and continuing until coverage terminates in accordance with the Contract Termination provision.

**COVERED PERSON** means any one individual entitled to benefits under the specific terms and provisions of the Employee Benefit Plan. Only eligible classes and individual(s) whose initial and continued eligibility is fully described in the copy of the Plan on file with the Company shall be considered a Covered Person.

**COVERED UNIT** means the following person or persons who are covered under the Plan:
• an Employee;
• an Employee with dependents.

**EMPLOYEE BENEFIT PLAN** (also known as the Plan) means the self-funded Plan of benefits provided by the Policyholder for Covered Persons. A copy of the Plan or plans in effect on the Contract Effective Date is attached to the Application and made a part of this Contract.

**HONORED** means the date a draft, check or electronic fund transfer is processed by the Policyholder's bank and funds are issued to the payee.

**INCURRED** means with respect to medical services and supplies, the date on which the Services Are Rendered or supplies are received by the Covered Person. For inpatient hospital/facility charges and professional fees provided during an inpatient stay a claim is considered incurred on the date the Covered Person is discharged from the hospital/facility.

**LOSS, LOSSES** means Reasonable and Customary Charges actually Paid by the Policyholder for eligible benefits under the Plan.

**LATE ENTRANT** is an eligible Covered Person who requests coverage in the Employee Benefit Plan more than 30 days after the date the person was first eligible to enroll. A person shall not be considered a Late Entrant if he:
• was covered under another Policyholder's group health plan at the time of initial enrollment; and
• stated at the time of initial enrollment that coverage under another Policyholder's group health plan was the reason for declining coverage; and
• has lost coverage under another Policyholder's group health plan due to termination of employment, termination of the plan, death of a spouse or divorce; and
• requests coverage within 30 days after termination of such coverage; or
• applies for coverage on a spouse or minor child within 30 days of a court order requiring coverage be provided under the Plan.

**PAY, PAID, PAYMENT** means actually funded by means of drafts, checks or electronic fund transfers that are issued by the Policyholder, received by the payee and Honored. When the preceding requirements are met, the date of payment is the date the draft, check or electronic fund transfer is issued, provided it is delivered and Honored within 30 days of the issued date. In the event the draft, check or electronic fund transfer is not Honored within 30 days of issue, the date of payment becomes the date the draft, check or electronic fund transfer is Honored.

**POLICYHOLDER** is the legal entity to whom the Company has issued the Contract.

**REASONABLE AND CUSTOMARY CHARGE(S)** means the usual charge made by the provider of care for a service, not to exceed the usual charge made by the majority of like providers for the same or like service in the same geographical area in which the service or treatment is performed. If the Plan has a contracted fee arrangement with certain health care providers, "Reasonable and Customary Charges" shall mean the lessor of the applicable fee as defined in that fee arrangement contract or the usual charge made by the majority of like providers for the same or like service in the same geographical area in which the service or treatment is performed.

**SPECIFIC DEDUCTIBLE** means the amount of the Policyholder's responsibility for each Covered Person under the Plan during the Benefit Period as specified in the Schedule of Stop Loss. For each Covered Person, the Specific Deductible will apply separately to each Benefit Period. If this Contract terminates during any Contract Period, the Specific Deductible will be calculated as if this Contract had remained in effect for the full Contract Period.

**SPECIFIC STOP LOSS** means the amount the Company will reimburse the Policyholder for eligible Losses Paid by the Policyholder over and above the Specific Deductible for a Covered Person while this Contract is in force as set forth in the Schedule of Stop Loss, and subject to the terms, conditions and limitations of this Contract.

**SERVICES ARE RENDERED** means the date the services were provided.

**THIRD PARTY ADMINISTRATOR** means a firm or person which has been retained by the Policyholder to pay claims and/or provide administrative services on behalf of the Policyholder Plan. Administrator in this definition does not have the same meaning as the term "Plan Administrator" used in the Employee Retirement Income Security Act of 1974 (ERISA), unless the Policyholder has specifically appointed their Administrator to perform as such.

## DUTIES OF THE POLICYHOLDER

**DUTIES OF THE POLICYHOLDER** in this Contract are conditions precedent to the Company's liability. No reimbursement shall be payable unless, the conditions precedent have been met.

**THIRD PARTY ADMINISTRATOR:** The Policyholder may retain a Third Party Administrator, who is approved by the Company, to act as the Policyholder's agent in performing administrative duties on behalf of the Policyholder. Without waiving any of its rights under this Contract, and without making the designated Third Party Administrator a party to this Contract, the Company and the Policyholder agree to recognize the Third Party Administrator as an agent for the Policyholder.

**PAYMENT OF CLAIMS:** The Policyholder must Pay all eligible claims under the Plan within forty-five days from the date adequate proof is provided to the Policyholder. If the Policyholder fails to pay claims within the forty-five day time limit, that claim will not count towards the satisfaction of the Specific Deductible or be reimbursed under this Contract and the Company will have the option to terminate this Contract.

**NOTICE OF CLAIM:** Policyholder's written Proof of Loss must be submitted to the Company within 90 days of it being Paid by the Policyholder.

**LITIGATION:** A copy of any document filed by or against the Policyholder in any court in connection with litigation under the Plan must be promptly furnished to the Company. The Policyholder shall pay all attorneys' fees and any punitive or exemplary damages incurred under this Contract by reason of any litigation in which the Company shall, without its fault, become involved through or on account of this Contract or the Plan.

**TAXES:** In the event any taxing authority which has jurisdiction over either of the parties finds that Additional Taxes must be paid in respect of this Contract, the Plan, or related matters, the Policyholder shall be responsible for such Additional Taxes. An amount equal to the total amount to be paid because of such Additional Taxes shall be promptly paid by the Policyholder to the Company upon written request. "Additional Taxes" means those which are in addition to the premium taxes paid by the Company with respect to this Contract.

**REPORTING REQUIREMENTS:** The Policyholder will submit by the 12th day of each month all proof of Loss reports and supporting documents including, but not limited to, a monthly summary of all Losses Paid by the Policyholder and total number of Covered Units covered under the Plan during the prior month. The Policyholder will be responsible for the investigation, auditing, calculating and the Payment of all claims under the Plan.

**RECORDS:** The Policyholder will maintain records of all Covered Persons under the Plan during the Contract Period and for a period of seven years after the termination of this Contract. The Policyholder shall make such records available to the Company as needed to evaluate its liability under this Contract.

The Policyholder will maintain a separate record of any and all amounts Paid in excess of benefits eligible under the Plan.

**TERMINATION:** The Policyholder will immediately notify the Company if the Policyholder's Plan is terminated.

**TIMELINESS:** Time is of the essence. The Policyholder must comply with all deadlines stated in this Contract.

## MISCELLANEOUS PROVISIONS

**AMENDMENT TO THE PLAN:** No Plan change will affect this Contract without the Company's written consent. Written notice of the Plan change must be given to the Company at least thirty-one days prior to the effective date of the change. If such advance written notice is not received and accepted, the Company's reimbursement may be made as if the Plan had not been amended, at the Company's discretion. The Company's reimbursement will be made according to the amended Plan, once the notice is received and accepted.

**AUDITS:** The Company will have the right:
- to inspect, copy and audit all records and procedures of the Policyholder and Third Party Administrator developed and maintained for the Plan that are applicable to the administration of the Stop Loss Insurance Contract, and
- to require, upon request, proof of records satisfactory to the Company that Payment has been made to the Covered Person or the provider of such services or benefits which are the basis for any Loss by the Policyholder hereunder.

**CHANGES:** Only the President, a Vice President, or the Secretary of the Company has the authority to alter this Contract or to waive any of the Company's rights and then only in writing. No such alteration of this Contract shall be valid unless endorsed on or attached to this Contract. No Agent, Broker, or Third Party Administrator has the authority to alter this Contract or to waive any of its provisions, including premiums shown in the Schedule of Stop Loss.

**CLERICAL ERROR:** Clerical error, inadvertent delay or omission in keeping any records pertaining to the coverage, whether by the Policyholder or by the Company, will not invalidate coverage otherwise validly in force nor continue coverage otherwise validly terminated, provided such clerical error, inadvertent delay or omission is not prejudicial to the Company and is rectified promptly upon discovery.

**CONCEALMENT, FRAUD:** This entire Contract will be void if, the Policyholder or its agent has concealed or misrepresented any material fact or circumstance concerning this Contract, including any claim or any case of fraud by the Policyholder or its Agent relating to this Contract.

**ENTIRE CONTRACT:** The entire Contract between the Company and the Policyholder will consist of this Contract, the Application (including the proposal and Disclosure Statement and any other information submitted by the Policyholder required for underwriting approval), letters of understanding, any continuance requests, approved amendments, the Policyholder's Plan Document which is on file with the Company, and the Trustmark Stop Loss Administrator Application.

**INSOLVENCY:** The insolvency, bankruptcy, financial impairment, receivership, voluntary plan of arrangement with creditors, or dissolution of the Policyholder or the Policyholder's Third Party Administrator will not impose upon the Company any liability other than the liability defined in this Contract. In particular, the insolvency of the Policyholder will not make the Company liable to the creditors of the Policyholder, including Covered Persons under the Plan.

**LEGAL ACTION:** No legal action may be brought against the Company until there has been full compliance with all the terms of this Contract. All Contract terms will be interpreted under the laws of the state shown on page 1 of this Contract. No legal action may be brought to recover on this Contract within 60 days after written proof of loss has been furnished. No legal action may be brought after three (3) years from the time written proof of loss is required to be furnished unless the laws of the state shown on page 1 of this Contract provide otherwise. Venue for any legal action filed by either party under this Contract, shall be located in Chicago, Illinois.

**LIABILITY:** The Company will have neither the right nor the obligation under this Contract to directly pay any Covered Person or provider of professional or medical services. The Company's sole liability is to the Policyholder, subject to the terms and conditions of this Contract. Nothing in this Contract shall be construed to permit a Covered Person to have a direct right of action against the Company. The Company will not be considered a party to the Employee Benefit Plan or to any supplement or amendment to it. The Policyholder may not assign reimbursement under this Contract, and the Company will not recognize any such assignment.

**MISSTATED DATA:** The Company has relied upon the underwriting and Third Party Administrator information provided by the Policyholder, or the Policyholder's Agent, in the issuance of this Contract. Should subsequent information become known which, if known prior to issuance of this Contract, would have affected the rates, deductibles, terms or conditions for coverage, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Policyholder.

**NONCONFLICTING LANGUAGE WITH PLAN AND STOP LOSS CONTRACT:** Any provision in the Plan which purports to alter or conflict with the terms, conditions or provision of this Contract shall be null and void insofar as it might affect the Company's liability under this Contract.

**NOTICE:** For the purpose of any notice required from the Company under the provisions of this Contract, notice to the Policyholder's Third Party Administrator shall be considered notice to the Policyholder and notice to the Policyholder shall be considered notice to the Policyholder's Third Party Administrator. Notice from the Policyholder to the Policyholder's Third Party Administrator and notice from the Third Party Administrator to the Policyholder shall not be considered notice to the Company.

**OTHER COVERAGE:** The reimbursement provided by this Contract is in excess of other coverages such as group insurance, excess insurance, reinsurance, plan benefits including insurance or benefits established by any federal, state or local law.

**OVER-REIMBURSEMENT, THIRD PARTY RECOVERY, OTHER CARRIER LIABILITIES:** Amounts Paid which are reimbursed by, or payable by other insurance companies, reinsurers or third parties will not be included in Specific Stop Loss.

- Should there be a recovery of Paid claims due to a subrogation, reimbursement, or third party liability provision in the Plan, the amount of recovered Plan payments will not apply to Specific Stop Loss. The Company will not reimburse amounts recovered. If the Company reimburses the Policyholder for amounts that are later recovered from a third party payer, the amount recovered must be refunded by the Policyholder to the Company to the extent of any reimbursement, whether or not this Contract is still in force on the date the recovery is received.
- Should there be an over-reimbursement due to clerical or other error, the over-reimbursement must be refunded.
- If benefits for a Covered Unit are payable under an extension of benefits provision of a previous insurance carrier, the Company will not accept responsibility for the expenses payable under the prior coverage for such individuals.
- Any Payment made in error may be recovered from the Policyholder. At the Company's option, we may offset the overpayment against future benefit payments. The acceptance of premium or continued reimbursements under the Plan shall not constitute a waiver of Our rights under this section. Recovery or offset shall be in addition to any other remedy available to Us at law or in equity.

**PARTIES TO THE CONTRACT:** The parties to this Contract are the Policyholder and the Company. The Company's sole liability under this Contract is to the Policyholder. This Contract does not create any right or legal relation between the Company and a Covered Person under the Employee Benefit Plan. This Contract will not be deemed to make the Company a party to any agreement between the Policyholder and any Third Party Administrator.

**RENEWAL:**  At the end of the Contract Period, but only by mutual agreement of the Policyholder and the Company, this Contract may be renewed for another Contract Period. The renewal may be subject to new premium rates, new underwriting terms, a new Benefit Period and new Contract terms. Company approval of a continuance request by the Policyholder for Stop Loss Insurance resulting in a new Contract Period, Benefit Period and new Contract terms and conditions will effect a new Schedule of Stop Loss.

**SEVERABILITY CLAUSE:**  Any clause deemed void, voidable, invalid, or otherwise unenforceable, whether or not such a provision is contrary to public contract, will not render any of the remaining provisions of this Contract invalid.

**SUBROGATION:**  The Policyholder has the sole obligation to pursue, to the full extent of the legal remedies available to it, all claims that it may have against third parties when they arise out of an occurrence which results in a Loss.  Should the Policyholder fail to pursue a claim that it may have against a third party, and should it not otherwise pursue all legal remedies available to it and should the Company then become liable to make payments under the terms and conditions of this Contract, then the Company shall determine its payment under this Contract as if the Policyholder had in fact pursued its legal remedies and had been successful.

**WAIVER:**  Failure of the Company to insist upon the Policyholder's strict compliance with any requirement or condition of this Contract at any time or under any circumstance shall not constitute a waiver of such requirements or condition by the Company at any time under the same or different circumstances.

**EXCLUSIONS**

Losses under the Plan shall not include, and the Company shall not be liable for, any of the following.

1. Court costs.
2. Interest upon judgments.
3. Cost of investigations or other claims administration costs.
4. Legal expenses.
5. Punitive or other damages assessed against the Policyholder, Third Party Administrator or other party associated with the Plan.
6. Salaries paid to Employees of the Policyholder or of the Third Party Administrator and any other Policyholder contracted services.
7. Amounts Paid for
   - any individual who is not eligible for benefits under the Plan;
   - any services or supplies, rendered to a Covered Person, when such service or supply is not a covered service under the Plan.
8. Amounts Paid for Covered Persons which are in excess of Reasonable and Customary charges.
9. Amounts Paid under the Plan for a Covered Unit whose evidence of good health as a Late Entrant is not approved by the Company.
10. Amounts Paid under the Plan which would not have been Paid if benefits were coordinated according to the National Association of Insurance Commissioners (NAIC) Model COB Guidelines.
11. Amounts Paid for treatment not due to sickness or injury, including cosmetic surgery or any treatment to correct complication of cosmetic surgery except cosmetic surgery required to correct birth defect of a child born to or adopted by a Covered Person while his coverage under the Plan is in force; or cosmetic surgery to correct the result of a non-cosmetic surgery that results in deformity, trauma, infection or disease of the involved party.
12. Amounts Paid as benefits for alcohol or drug abuse and mental or nervous disorders in excess of the lessor of:
    - $50,000 Paid to a Covered Person during a Contract year; or
    - the amount payable under the Plan.
13. Claims arising out of or caused by or contributed to or in consequence of war or act of war, declared or not, hostilities, invasion or civil war.
14. Claims which were incurred prior to the start of the first Contract year, whether advised of at that time or later, unless specifically covered by the terms of this Contract.
15. Claims arising out of or in the course of any occupation or employment for wage or profit.
16. Claims for which the Covered Unit is entitled to benefits under any Workers' Compensation or Occupational Disease Act or Law.
17. Claims arising out of nuclear accident.
18. Any managed care discount, negotiated discount, audit savings or other discount or savings forfeited or waived by the Policyholder for any reason, including but not limited to untimely payment.
19. Experimental or Investigative services, treatments, procedures, technology, supplies or drugs which:
    - have not been approved by the Federal Food and Drug Administration;
    - are not widely recognized and accepted as effective, safe and appropriate for the sickness or injury by the medical profession in the U.S.;
    - are in the research or investigative stage, or conducted for research or similar purposes; or
    - the patient has been asked to sign or has signed a release or other document indicating that the treatment is Experimental or Investigative or other term of similar meaning.

    In determining any of the above, the Company will rely on recognized medical sources such as, but not limited to, the American Medical Association, including the Council of Technology Assistance Program and the Council on Medical Special Services; the National Institute of Health; Medicare; the Food and Drug Administration and other accepted medical authorities and sources.

20. The Company shall not be liable for:
    - Amounts Paid for claims submitted to or Paid by the Plan, more than 365 days after the services were Incurred.
    - Amounts Paid for Losses where evidence of Payment satisfactory to the Company of such Loss was submitted to the Company more than 90 days after the Benefit Period.

21. Notwithstanding the clerical error provision under Miscellaneous Provisions, this Contract shall exclude any amounts Paid for Covered Persons, whose coverage under the Consolidated Omnibus Budget Reconciliation Act (hereafter referred to as COBRA) is continued beyond the timeframes specified by federal law for any reason including clerical error of the Policyholder; who do not receive a valid COBRA extension offer within the 30 days immediately following a COBRA qualifying event; who fail to make a valid, signed COBRA election within the 60 days immediately following the receipt of COBRA election rights from the Policyholder; or who fail to remit COBRA premium within the period specified by federal law. The Company will require written documentation that these requirements have been satisfied.

SL-0601 NV R01/03                    12

## PREMIUMS AND FACTORS

**PAYMENT OF PREMIUMS:** No coverage under this Contract will be in effect until the first premium is paid. For coverage to remain in effect, each subsequent Payment as shown in the Schedule of Stop Loss for the applicable Contract Period, must be paid on or before its due date. The Policyholder is responsible for the Payment of its premiums. Premiums are not considered paid until the premium Payment is received by the Company.

**GRACE PERIOD:** A Grace Period of 31 days from the due date will be allowed for the Payment of each premium after the first premium Payment. During the Grace Period, the coverage will remain in effect provided the premium is paid before the end of the Grace Period. Should a premium otherwise due, not be paid during the Grace Period, this Contract will terminate without further notice, as of the date for which premiums were last paid.

**PREMIUM AMOUNT:** The Policyholder's premiums will be calculated using rates determined by the Company as set forth in the Schedule of Stop Loss. The amount of total premium due is the sum obtained by multiplying each rate shown in the Schedule of Stop Loss by the Covered Units to which the rate applies.

The Policyholder will be liable for any premium taxes assessed at any time against the Company above any taxes which may be payable on the premium received by the Company.

Any correction to the Specific premium of the Covered Units for the preceding Contract Period must be reported to the Company within sixty days after the last Contract month of the preceding Contract Period.

**PREMIUM RATE CHANGE:** The Company may change the Policyholder's premium rate on any of the following:
- the date when the terms of this Contract are changed; or
- the date the Policyholder adds or deletes subsidiary or affiliated companies or divisions; or
- the date of any revision to the Employee Benefit Plan; or
- the date the geographic area in which the Policyholder has Employees or the nature of business in which the Policyholder is engaged in changes; or
- The date there is a change in enrollment exceeding 10% of the first month's enrollment of the current Contract Period or the 9th month of the prior Contract Period.

The Company reserves the right to recalculate the premium rate for the Contract Period, if there is more than a ten percent (10%) variance between:
- the average monthly Paid claims under the Plan for the last two months of the prior Contract Period; and
- the average monthly Paid claims under the Plan for the first ten months of the prior Contract Period.

## CONTRACT TERMINATION

This Stop Loss Insurance Contract will continue in effect until the end of the Contract Period, unless coverage is terminated as set forth below.

This Contract and all benefits will terminate upon the earliest of the following dates:
- on the due date of any premium which remains unpaid at the end of the Grace Period; or
- the premium due date next following receipt by the Company of written notice from the Policyholder that this Contract is to be terminated; or
- the date of termination of the Employee Benefit Plan; or
- the date the Policyholder suspends active business operations or is placed in bankruptcy or receivership; or
- the date the Policyholder dissolves; or
- the date the Third Party Administrator is changed.

This Contract may also be terminated at the Company's option on:
- the date the number of Covered Units under the Employee Benefit Plan becomes less than seventy-five;
- the date the Policyholder fails to perform the Duties of the Policyholder as set forth in this Contract; or
- the date the Third Party Administrator is disapproved by the Company.
- failure of the Policyholder to adequately fund underlying Employee Benefit Plan claims within 45 days from the date adequate proof is provided to the Policyholder.

The Company will not refund any portion of the premium paid by the Policyholder whose Plan terminated during the Contract Period.

SL-0601 NV R01/03                    14

## SPECIFIC STOP LOSS

**COVERAGE PROVISION:** If the Policyholder's Losses for the Benefit Period, as shown in the Schedule of Stop Loss, exceeds the Specific Deductible, the Company will reimburse the Policyholder, subject to the terms and conditions of this Contract including the limits in the Schedule of Stop Loss, an amount:

- equal to the Specific Percentage Reimbursable of Specific Stop Loss times the amount by which Losses exceed the Specific Deductible amount; but
- not to exceed the Lifetime Maximum Specific Benefit.

**CONDITIONS:** Losses for any Covered Person during the Contract Period will be determined according to the Benefit Period as shown in the Schedule of Stop Loss.

The Specific Deductible amount as shown in the Schedule of Stop Loss applies separately to each Covered Person during a Benefit Period.

**CLAIM SETTLEMENTS:** The Company will reimburse the Policyholder for a Specific Stop Loss as herein provided, within a reasonable period of time once satisfactory evidence of Payment of such Loss is received and approved by the Company.

While the determination of benefits under the Plan is the sole responsibility of the Policyholder, the Company reserves the right to interpret the terms and conditions of the Plan as they apply to the Stop Loss Insurance Contract. If Company finds that any Payment was not made in accordance with the terms of the Plan, or is not an eligible benefit under the Plan, the Company may exclude such Payment from Losses. The Company will have the sole authority to reimburse or deny Losses under this Contract.

**TRUSTMARK INSURANCE COMPANY**
**Advanced Funding for Individual Stop Loss Contract Amendment**

The Definition section of the Stop Loss Contract will be revised as follows:

**Loss, Losses** means Reasonable and Customary charges determined to be payable by the Policyholder for eligible benefits under the Plan.

The term Advance Funding shall be added and defined as follows:

**Advanced Funding** shall mean the process by which we issue funds to you equal to the amounts eligible under your Plan as Covered Benefits for a Covered Person during a Contract Period after:

* You have Paid an amount equal to the Individual Stop Loss Deductible for an Individual during a Contract period, and

* You have Losses greater than $10,000 above the Individual Stop Loss Deductible which have not been Paid.

Except as set forth herein, all terms, conditions, and provisions of the Policyholder's Stop Loss Contract will apply.

On the conditions that all the provisions of the Stop Loss Contract and conditions set forth herein have been followed, we agree to provide you with Advance Funding. Before a claim will be approved for Advance Funding, we must receive satisfactory proof of claim eligibility, including all information requested by Company to determine Company's liability for the claim. Any claims approved for Advanced Funding by Company will be considered reimbursed by Company and will not be further eligible for reimbursement at time of payment under the Stop Loss Contract.

**Limitations**

* Advance Funding is only available while the Stop Loss Contract is in force.

* Advance Funding is only available for Losses greater than $10,000 over the Individual Stop Loss Deductible.

* Advance Funding is not available during the last 30 days of the Contract Period.

* Policyholder must fund, via mail or electronic funds transfer, the claim for which Advance Funding is requested within 10 business days of receipt of Advance Funding from Company. If such payment is not made by Policyholder within 10 days, Policyholder shall immediately refund to Company the funds advanced by Company to Policyholder and Company may revoke Advance Funding privileges.

* It is the Policyholder's sole responsibility to request and apply Advance Funding in a manner that will secure appropriate provider discounts. In the event Policyholder cannot fund a claim in time to secure appropriate provider discounts, Company will not be liable for the amount that the discounts would have been if the provider had been timely paid.

* It is the Policyholder's sole responsibility to request and apply Advance Funding in a manner consistent with all current Plan and Contract provisions and applicable state and federal laws. In the event the Policyholder cannot request and receive Advance Funding from Company in time to meet any provision of the Plan, Contract or applicable law or secure appropriate provider discounts, Policyholder must immediately Pay all Losses. No provision herein shall be deemed to alter the definition of Pay, Paid, or Payment in the Stop Loss Contract, nor will it change any payment requirement contained therein, including but not limited to the denial of:

  - Losses not Paid by Policyholder within the Benefit Period

  - Losses not Paid by the Policyholder within the 45 day time limit specified in PAYMENT OF CLAIMS.