IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE MAJESTIC STAR CASINO, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 07 C 2474 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| TRUSTMARK INSURANCE COMPANY ) | |
| and RMTS, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Majestic Star Casino, LLC ("Majestic") filed a five-count amended complaint against defendants Trustmark Insurance Company ("Trustmark") and RMTS, LLC ("RMTS") alleging claims arising from a Trustmark policy for "stop loss" insurance for Majestic employee benefit plans. Trustmark subsequently filed a four-count counterclaim. The parties filed cross-motions for partial summary judgment, and on October 8, 2009, the court issued a memorandum opinion and order (the "October 8 Order") in which it denied summary judgment on Trustmark's claims that plaintiff, (1) failed to pay $285,251.36 within the benefit period designated in the stop loss policy, and (2) failed to pay different claims totaling $75,506.62 within 365 days from the last dates of service as required by the contracts.[1] Trustmark has moved for reconsideration of the October 8 Order. The motion is granted.

Generally, "[t]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." Quaker Alloy Casting Co. V. Gulfco. Industries, Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1998). Such motions are appropriate only to

---

[1] As with the October 8 Order, for the sake of simplicity and consistency, the court will refer to Trustmark and RMTS's joint filing and their accompanying arguments as Trustmark's.

correct manifest errors of law or fact.  <u>Oto v. Metropolitan Life Insurance Co.</u>, 224 F.3d 601, 606 (7th Cir. 2002).[2]

Central to the court's October 8 Order was the finding that a definition of the word "issue" was essential for ascertaining the timeliness of various payments Majestic made to cover employee health claims.  Moreover, the court found that whether Trustmark waived these claims because it waited four years to raise the timeliness of payment as justification for not paying the claims raised a contested issue of fact.  In the instant motion, Trustmark argues that the court's October 8 Order misinterpreted several key facts that, when properly considered, would counsel granting partial summary judgment in its favor on two separate groups of claims.

### *Late Paid Claims*

Under the stop loss contracts, for a claim to be eligible for reimbursement Majestic must have "paid" the claim under its health plan within the designated benefit period.  There is no dispute that claims under the 2004 contract were to be paid during the 2004 calender year, and claims under the 2005 contract were to be paid during the 2005 calender year.  The parties also agree that the "paid date" is defined as the date a "check, draft or electronic fund transfer is [h]onored."  The exception is when a payment is honored within 30 days of being "issued," in which case the "paid date" is the "issue date."

Trustmark argued in its original motion for partial summary judgment that Majestic paid claims totaling $285,251.36 outside of the designated benefit periods.  Majestic countered, and

---

[2] See also, Gettleman, "How to Tell a Judge He Screwed Up," ABA Litigation Magazine, Vol. 32, No. 4 (Summer 2006), p. 49.

the court agreed in its October 8 Order, that these late paid claims could not be resolved on summary judgment due to the lack of an agreed definition for the word "issue" under the contract, and because whether Trustmark had waived these arguments presented a contested issue of fact. Trustmark argues in the instant motion that notwithstanding the parties' dispute about the meaning of "issue date" – which affects only $48,553.72 of claims paid in January of 2004 and 2005 – there are undisputed facts supporting a finding of summary judgment in Trustmark's favor for the remainder of the claims totaling $236,697.64.

Trustmark draws the court's attention to an exhibit compiling checks listed on Majestic's bank records for January 1, 2004, through December 31, 2006. It argues that checks clearing more than 30 days after the end of the calendar year were issued on the date they were honored, rather than the date they were sent. Therefore, any checks that cleared Majestic's bank account after January 30 of the year following the end the applicable stop loss contract were "paid" on the date the checks were honored. Trustmark also contends that there are numerous checks that have never cleared Majestic's bank account, and claims filed based on these checks are ineligible for stop loss coverage.

Majestic agrees that the disputed definition of "issue date" is relevant only to the $48,553.72 of claims paid in the first 30 days of 2004 and 2005. It also does not dispute that claims totaling $236,697.64 were not paid within the benefit periods of the stop loss contracts. Instead, Majestic contends that Trustmark is estopped from denying these claims because it waived the payment requirements it now seeks to enforce. Specifically, Majestic argues that Trustmark waived the stop loss policies' payment requirements because it selectively enforced these requirements in an effort to save money. Majestic claims that Trustmark knew that

Majestic's third party benefits administrator, Benefit Administrative Systems ("BAS"), was not paying underlying claims until it received advanced funding from Trustmark, and chose to remain silent in contravention of the advanced funding provisions of the stop loss contracts. Majestic thus contends that Trustmark delayed the processing of numerous stop loss claims, which resulted in long delays in BAS releasing Majestic's funds to health care providers.

In the October 8 Order, the court denied summary judgment on the late paid claims in part because it found that there was a question of fact whether Trustmark waived its argument because it waited four years to raise it as a justification for not paying the claims. On reconsideration, the court grants partial summary judgment in favor of Trustmark on this issue because Majestic has failed to establish that there are remaining genuine issues of material fact.

Majestic's first argument is that Trustmark is estopped from enforcing the payment requirement provisions in the contracts. Under Nevada law, which applies to the instant claim, the elements of estoppel are:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

NGA # 2 Ltd. Liab. Co. v. Rains, 113 Nev. 1151, 1160 (Nev. 1997).

Majestic does not cite these elements in its argument, nor does it provide facts to support an estoppel theory. Instead, Majestic points to an email exchange in which RMTS and BAS discuss expediting advance funding for a particularly large claim in order to secure provider

discounts for Majestic.[3]  Based on this single email correspondence regarding claims for a single beneficiary, Majestic asserts that Trustmark is estopped from enforcing the policy because it generally knew that BAS was not releasing monies for claims until first receiving advance funding and chose to not enforce the stop loss policies.

Needless to say, this email exchange is woefully inadequate to support a viable theory of estoppel.  It only goes to show that in one instance Trustmark attempted to rush advance funding to help Majestic secure a provider discount.  The emails do not establish a general course of dealing whereby Trustmark invariably ignored the payment requirements of the stop loss policies and Majestic came to rely to its detriment on these frequent exceptions.

Majestic has also failed to support its theory of waiver sufficiently.  Under Nevada law, waiver is "the intentional relinquishment of a known right."  Thompson v. City of N. Las Vegas, 108 Nev. 435, 439 (Nev. 1992).  To be effective, "a waiver must occur with full knowledge of all material facts."  Id.  Majestic points to the same email exchange discussed above to support a finding that Trustmark knowingly relinquished its legal right to require Majestic to pay claims within the stop loss policies' benefits periods.  However, contrary to Majestic's assertions, there is nothing in the emails to suggest that Trustmark knew that BAS was not releasing payments

---

[3] Under the Advanced Funding provisions of the stop loss contracts, Trustmark agreed to provide advance funding for eligible claims exceeding $10,000.  Majestic did not have to first pay these claims before seeking stop loss reimbursement from Trustmark, but the policy makes clear, as discussed above, that notwithstanding a request for advance funding, Majestic still had to pay the medical provider within the benefit period.  The provision states that, "No provision herein shall be deemed to alter the definition of Pay, Paid, or Payment . . . nor will it change any payment requirement . . . including but not limited to the denial of . . . Losses not paid by Policyholder within the Benefit Period."

before receiving advance funding from Trustmark for the specific claim being discussed, or any claims generally.

Majestic also contends that factual issues of waiver are raised as to Trustmark's knowledge of the untimely payments because Trustmark conducted a six month long audit of Majestic's stop loss claims. While Majestic has provided an affidavit acknowledging that an audit was conducted – a fact that is not in dispute – nothing in the affidavit, or anything else submitted by Majestic suggests that Trustmark learned about the late paid claims during the course of the audit and chose to ignore them. In fact, according to Trustmark, Majestic did not produce its bank records until January 29, 2009, in response to a discovery request in the instant case. Majestic has not refuted this assertion.

Because there is no dispute that Majestic failed to pay $236,697.64 of claims within the benefit periods of the stop loss contracts, and Majestic has not provided facts supporting its theories of estoppel and waiver, the court grants Trustmark's motion for partial summary judgment as to $236,697.64 of the late paid claims.

*Claims Paid More Than 365 Days After Services Were Incurred*

Trustmark's second argument concerns the $75,506.62 in claims paid more than one year after the medical expenses were incurred. The stop loss contracts contain a clause specifically excluding claims submitted or paid by Majestic more than 365 days after medical services were incurred. Trustmark argues that the "issue date" question is not material to the $75,506.62 relating to Plan beneficiary Maria Cruz, and that Majestic admits that this sum was paid more than 365 days after the expenses were incurred. Majestic offers no argument in response.

In reviewing the record, it becomes clear that the court's ruling on this issue resulted from the poorly drafted papers submitted in conjunction with the parties' motions for partial summary judgment, which failed to elucidate the underlying issue.  In fact, the parties do not dispute that Majestic paid $75,506.62 in claims after the one year deadline,  and Majestic did not raise a waiver argument as to these claims.  Moreover, Majestic has not offered any new argument on these claims in response to the instant motion.  Accordingly, Trustmark's motion to reconsider on this limited issue is granted, and the summary judgment is entered in its favor on the claims paid more than 365 days after medical services were incurred.

### CONCLUSION

Based on review of parties' submissions in relation to Trustmark's motion to reconsider the October 8 Order, the court finds that there are no disputed, material facts concerning, (1) late paid claims where definition of the word "issue" is not disputed, and (2) claims paid more than one year after medical expenses were incurred.  Having reassessed the applicable facts and exercising its discretion to reconsider its previous decision, the court determines that it should have granted partial summary judgment on this record.  The court therefore grants Trustmark's motion for reconsideration and grants Trustmark's motion for partial summary judgment for $236,697.64 in late paid claims and $75,506.62 in claims paid more than one year after the medical expenses were incurred.

**ENTER:** November 17, 2009

_____
**Robert W. Gettleman**
**United States District Judge**